IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

UNITED STATES OF AMERICA

v.

STEPHEN M. HOWELLS, II,

Defendant.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Case No.    5:14-CR-340 (GTS)

GOVERNMENT'S SENTENCING
MEMORANDUM

The United States of America, by and through its counsel of record, the United States Attorney for the Northern District of New York, hereby files its sentencing memorandum requesting, for the reasons set forth below, that the Court impose a Guidelines sentence of 580 years imprisonment and lifetime supervised release.

## INTRODUCTION

On May 8, 2015, defendant Stephen M. Howells, II entered a plea of guilty to all counts of a twenty-one-count Superseding Indictment charging him with one count of conspiracy to sexually exploit minors in violation of Title 18, United States Code, Sections 2251(a) and (e) (Count 1); fifteen counts of sexually exploiting six different minors, in violation of Title 18, United States Code, Section 2251(a) (Counts 2 - 16); and five counts of possessing material that contains one or more images of child pornography, in violation of Title 18, United States Code, Section 2252A(a)(5)(B) (Counts 17 - 21).

Howells is scheduled to be sentenced on December 17, 2015.

## APPLICABLE STATUTORY AND GUIDELINES PROVISIONS

**1.      Statutory Maximum and Minimum Sentences**

The defendant's convictions on Counts 1 - 16 of the Superseding Indictment subject him to

a mandatory minimum of 15 years, and a maximum sentence of 30 years imprisonment, per count. 18 U.S.C. § 2251(e); PSR ¶ 312.   His convictions on Counts 17 - 21 carry a maximum term of 20 years imprisonment per count. 18 U.S.C. § 2252A(b)(2); PSR ¶ 312.

In addition, each count of conviction carries with it a mandatory term of supervised release of at least 5 years, and up to life, 18 U.S.C. § 3583(k), PSR ¶ 316, and a fine of up to $250,000. 18 U.S.C. § 3571; PSR ¶¶ 321.[1]

**2.      Guidelines Provisions**

**a.      Offense Level**

The Government agrees with the Guidelines computations of the Probation Officer, and that the defendant's Total Offense Level is 43.   PSR ¶¶ 66 – 278.

**b.      Acceptance of Responsibility**

The Government moves for an additional one-level downward adjustment pursuant to U.S.S.G. § 3E1.1(b) to credit the defendant for having "timely notified authorities of his intention to enter a plea of guilty, thereby permitting the U.S. Attorney's Office to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently."   PSR ¶ 274.

**c.      Criminal History Category**

According to the presentence report, the defendant's criminal history category is I.   PSR ¶ 281.   The Government agrees with the Probation Officer's determination of the defendant's criminal history category.   While this designation "does not adequately reflect the seriousness of the defendant's past conduct or the likelihood of recidivism," because the Guidelines call for a life sentence in any event, the Government is not seeking an upward departure from this criminal

---

[1]      The Government agrees with the assessment of the Probation Officer that the defendant does not have the ability to pay a fine.   PSR ¶¶ 307 - 311.

history category.   *See* U.S.S.G. § 4A1.3.

> **d.     Guidelines Range and Sentence**

As described above, the defendant's total offense level is 43 and his criminal history category is I.   As a result, the Sentencing Guidelines advise that the defendant receive a sentence of life.   PSR ¶ 313.   However, since no count of conviction carries a potential life sentence, U.S.S.G. § 5G1.2(d) provides that the sentences imposed on each count of conviction shall run consecutively "to the extent necessary to produce a combined sentence equal to the total punishment."   Here, the total punishment available to the defendant is 580 years, representing consecutive maximum sentences on each count of conviction.   PSR ¶¶ 313 - 314; s*ee United States v. Ketcham*, 507 F. App'x 42, 44 (2d Cir. 2013); *United States v. Petrie*, 542 F. App'x 746, 747-48 (2d Cir. 2013).   For all of the reasons set forth below, the Government maintains that this Guidelines sentence is fair, just, and warranted.

The Guidelines term of supervised release each count of conviction is no less than 5 years and up to life, PSR ¶ 318.   The Guidelines recommend lifetime supervision.   *Id.*; U.S.S.G. § 5D1.2(b)(2).

**3.     Forfeiture**

As set forth in the Forfeiture Allegation of the Superseding Indictment, the defendant shall forfeit to the United States all of his right, title and interest of any nature in any and all assets that are subject to forfeiture, pursuant to 18 U.S.C. § 2253.   That forfeiture includes the following:

> 1)     A 2004 red Pontiac, Sunfire, NY registration GCR6443;
> 2)     A 2001 white Honda, Civic, NY registration BVZ9284;
> 3)     An Antec homemade desktop computer with no serial number, containing five hard drives:
>> a)     one 500GB Seagate hard drive, S/N 5QM11ZRR;
>> b)     one 1.0 TB Western Digital hard drive, S/N WMATV8440832;
>> c)     one 500GB Western Digital hard drive, S/N WCAPW2257346;

        d)      one 300GB Seagate hard drive, S/N 5NF133W0; and

        e)      one 3000GB Seagate hard drive, S/N W1F23A2C;

    4)      A Canon G7 Digital camera S/N #3221205452;

    5)      An iPhone model #A1349, EMC#2422, FCC ID: BCG-E2422B; and

    6)      An iPhone model #A1387, IC# 579C-E2430A, FCC ID: BCG-E2430A.

**4.**    **Restitution**

In addition to the six minor victims involved in Counts 1 – 16, the minors depicted in the images and videos involved in the defendant's child pornography possession crimes, Counts 17 – 21, are victims of his offenses.   Restitution to the victims is mandatory, and the Court may not decline to award restitution because of the defendant's economic circumstances or the fact that the victims have, or are entitled to, receive compensation for their injuries from the proceeds of insurance or any other source.   18 U.S.C. §§ 2259(b)(3) and (c).

While there have been no restitution requests from the minors charged in Counts 1 – 16, as it applies to the victims of the defendant's possession offenses, he is responsible for restitution in "an amount that comports with the defendant's relative role in the causal process that underlies the victims' general losses," which shall be calculated by the Court to be a "reasonable and circumscribed award imposed in recognition of the indisputable role of the [defendant] in the causal process underlying the victim[s'] losses and suited to the relative size of that causal role." *Paroline v. United States*, __U.S.__, 134. S. Ct. 1710, 1727 (2014).   Five of these victims have filed requests for restitution as Howells' crimes involve their images. PSR ¶ 63.   The parties are in the process of determining whether the victims will continue to pursue restitution given the assessment that the defendant has no ability to pay,[2] or whether there is an amount of restitution that can be agreed upon to satisfy the restitution claims. Should negotiations fail, the Government

---

[2]      While ability to pay is not a consideration in whether restitution shall be ordered, it is often a consideration to the victims, as they assess whether an uncollectable judgment is in their best interest.

will brief the issue of restitution and what amounts should be awarded to the victims as a result of Howells' crimes.

## GOVERNMENT'S SENTENCING RECOMMENDATION[3]

For all of the reasons set forth herein, the Government maintains that a Guidelines sentence of 580 years imprisonment and lifetime supervised release is just, warranted, and not greater than necessary to comply with the purposes of sentencing.   18 U.S.C. § 3553(a).   The record reveals no mitigating factor that would suggest that anything but a Guidelines sentence is appropriate in this case.   Moreover, such a sentence is reasonably designed to achieve the total punishment, and takes into account the nature and seriousness of the defendant's crimes, the harm done to the child victims - not only the six victims whose exploitation came directly at the hands of the defendant, but also the hundreds of child victims whose images he collected from the Internet - and each of the relevant considerations required under 18 U.S.C. § 3553(a).

### 18 U.S.C. § 3553(a)(1)

The first factor to be considered under § 3553(a) is the "nature and circumstances of the offense and the history and characteristics of the defendant."    18 U.S.C. § 3553(a)(1).

The nature and circumstances of the defendant's offenses are in many ways too horrible

---

[3]     The Government reserves the right to respond to defense arguments.   Similarly, if the Court is considering a *sua sponte* departure from the applicable sentencing guidelines range on a ground not previously identified by the parties or in the Presentence Investigation Report, the parties are entitled to notice and an opportunity to respond.   *See* Fed R. Crim. P. 32(i)(1)(c), 32 (h).

Further, the United States respectfully requests that the Court provide the parties with any *ex parte* communications received by the Court in connection with sentencing, with the exception of the confidential sentencing recommendations submitted by the United States Probation Office.

to recount.   The extensive and perverse abuse of four little girls whose safety was entrusted to the defendant by their parents, followed by the vicious kidnapping and sexual abuse of two vulnerable little girls, taken from their family's roadside vegetable stand, are crimes that demand a stiff and sure penalty.

Howells began his offenses by specifically putting himself in a position of trust with the mothers of V-3, V-4, V-5, and V-6, and used that trust to gain access the girls. *See* PSR ¶¶ 5, 6, 42.   He not only abused each of these children, both alone and together with his co-defendant and co-conspirator Nicole Vaisey, but exploiting his status as a registered nurse, he also obtained and administered an alarming number of medications and controlled substances to these very young children, creating further peril to their well-being.   Howells admitted to law enforcement that he used both Benadryl and Ambien on the children, PSR ¶ 41, and he knew how dangerous these substances were.   Forensic review of his Internet search histories found queries for such things as signs of overdose, withdrawal symptoms, and, from a laptop used by Vaisey, a question that specifically asked: "Will I die if I take Ambien and Benadryl together?"   PSR ¶¶ 46, 48.

While Ambien was the drug he used with all of his victims, Howells also used other dangerous drugs, including Versed, morphine, and oxycodone.   V-3 alone was found to have ten different substances in her system.   PSR ¶ 6a.

When drugging and sexually exploiting known children became insufficient to quell their appetite, Howells and Vaisey hatched a plan, several months in the making, to abduct young girls for use as "slaves."   PSR ¶¶ 6d – 6g; 37.   While neither conspirator has explained why they targeted the Amish, it seems quite clear that in doing so they were gaining an advantage: vulnerable children in a community that does not possess a car to follow the kidnappers, or a phone to summon for help.   It is overwhelming to imagine the sheer terror inflicted on these

young girls, taken from their family and their community, held captive for more than 24 hours, drugged, and subjected to degrading and unspeakable brutalities.   PSR ¶¶ 30 – 39.

In addition to the acts of drugging and sexually abusing of each of his victims, Howells' depravity is further revealed by his commission of the crimes for which he is being sentenced – exploiting the children for the purpose of producing images of the abuse.   Here, too, Howells' actions were out of the ordinary.   He and Vaisey did more than "just" produce depictions of their sexual abuse of the children, instead their narcissistic filming often included recording the abuse by using multiple video devices and still photography - simultaneously capturing the abuse from multiple angles.   *See*, e.g., PSR ¶ 7.

In addition to the horrors inflicted upon all six of the named victims, Howells spent years victimizing hundreds of other young children by collecting images of their abuse from the Internet, again bringing to the forefront the very close association between on-line child pornography offenses and hands-on abuse.   Forensic review shows that Howells collected child pornography from the Internet beginning at least as far back as 1999, and maintained a collection of tens of thousands of image and video files depicting the sexual abuse of children, PSR ¶ 45, including depictions of bondage and the sadistic abuse and torture of the very young. *See*, e.g. PSR ¶ 28 (describing image depicting approximately 4 year old child, her hands bound by a cord above her head, and adult's penis pressed against her face); PSR ¶ 29 (describing a video file depicting the sexual abuse and torture of an infant).   Howells also possessed 180,753 images and 912 video files of sexually explicit conduct with children whose ages are not readily apparent, and over one million images of child and teen erotica.   PSR ¶ 45.

Within the thousands of files in Howells' collection, the National Center for Missing and Exploited Children has identified *389* individual children whose identities are known to law

enforcement as actual child victims identified in investigations worldwide.   PSR ¶ 49.   All of these children, as well as those whose images he collected but who have yet to be rescued and identified, are victims of Stephen Howells' offenses.

Howells describes his offenses as an obsession with a "fantasy situation" where he considered the "girl(s)" to be "two dimensional characters," and did not think he was hurting a real person, since he saw them as "objects."   PSR ¶ 65.[4]   This is really all one needs to know in order to truly assess "the history and characteristics of the defendant."   18 U.S.C. § 3553(a).

While in many cases there may be facts and circumstances that provide a mitigating counter-point to a defendant's criminal acts, this is not such a case.   There is simply nothing about Howells that lessens the evil of his actions.   If "[t]he true test of a man's character is what he does when no one is watching,"[5] Stephen Howells is the basest among us.   He poses a real and substantial threat to children, and to young girls in particular.   He is a violent and dangerous sex offender for whom the Guidelines range and recommended sentence of 580 years is not only appropriate but necessary, ensuring, as V-3 told her mother, that he will "never hurt another child again."   PSR ¶ 61.

**18 U.S.C. § 3553(a)(2)**

The next set of factors to be considered in imposing sentence include:

the need for the sentence imposed--(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;(B) to afford adequate deterrence to criminal conduct;(C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

---

[4]     Notably, even in his role as a registered nurse, Howells looked at the children he cared for in a sexual way.   *See*, e.g. PSR ¶ 55.

[5]     Quote by John Wooden, author and retired basketball player and coach.

18 U.S.C. § 3553(a)(2).

Certainly the recommended sentence achieves all of the relevant objectives.[6]  Few offenses are more serious, and the recommended sentence acknowledges that, while at the same time affording adequate deterrence to others, for to impose a lesser sentence in a case with so many aggravating factors provides little deterrence to those whose serious crimes do not include drugging, kidnapping, and the exploitation of multiple victims.

Given the nature and extent of the defendant's crimes, the number of victims, the act of kidnapping to obtain additional victims, the dangerous drugging of children to facilitate their sexual exploitation, and the years of on-line activity leading to the accumulation of an enormous collection of images depicting the sadistic abuse of children, a 580 year sentence will justly ensure public safety by forever removing Howells' access to children.

**18 U.S.C. §3553(a)(3), (4), (5), and (6)**

The final set of factors to be considered in imposing sentence, pertinent to this matter, are:

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for--
(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
(i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);
                              *        *        *
(5) any pertinent policy statement--

---

[6]      The defendant does not appear to be in need of educational or vocational training, or medical care.

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

&ast;     &ast;     &ast;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

18 U.S.C. §3553(a)(3)-(6).

First, the only kind of sentence available is incarceration, and the sentencing range as established by the Guidelines is 580 years.   PSR ¶ 313.   It is also noteworthy that the Guidelines offense levels go only as high as 43, while Howells scores 55 – **twelve levels higher**. PSR ¶¶ 66 - 278.

Second, the policy statement issued by the Sentencing Commission at U.S.S.G. § 5K2.0(b) advises against a departure from the Guidelines in child crimes and sexual offenses except in explicitly numerated circumstances, none of which, the Government submits, are present here.

Finally, adherence to the Guideline sentence is the best way to ensure against sentencing disparity "among defendants with similar records who have been found guilty of similar conduct."   18 U.S.C. § 3553(a)(6).

## CONCLUSION

For all of the reasons set forth above, the Government maintains that consecutive sentences totaling the maximum available sentence of 580 years, designed to ensure that the defendant spends the rest of his life in prison, is the outcome warranted by his crimes.   Such a sentence is not greater than necessary, and is sufficient to comply with and accomplish the many

goals of sentencing.    18 U.S.C. § 3553(a).


Respectfully submitted this 24th day of November, 2015,

RICHARD S. HARTUNIAN
United States Attorney


By:  /s/   *Lisa M. Fletcher*
Lisa M. Fletcher
Assistant United States Attorney
Bar Roll No. 510187

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

*******************************

UNITED STATES OF AMERICA

Case No.: 5:14-CR-340 (GTS)

v.

STEPHEN M. HOWELLS, II,

Defendant.

*******************************

**CERTIFICATE OF SERVICE**


I hereby certify that on November 24, 2015 I filed the **Government's Sentencing Memorandum** with the Clerk of the District Court and sent copies of said documents via ECF to the following:


Randi Juda Bianco, Esq.

/s/
Deanna Lieberman

12